# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTRHERN DISTRICT OF WEST VIRGINIA

**DOLAN L. WALLACE,**

    **Plaintiff,**

                                                                       3:10cv0497

**v.**                                            **Civil Action No:** _____
                                                    **Judge** _____

**CHASE INVESTMENT
SERVICES CORPORATION,
a corporation licensed to
do business in West Virginia, and
ALAN J. CHABOT, in his capacity as
Head of Retail Investments of
Chase Investment Services Corporation,**

    **Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, Dolan L. Wallace ("Mr. Wallace"), by counsel, and brings this Complaint against the Defendants, Chase Investment Services Corporation ("Chase") and Alan J. Chabot ("Mr. Chabot"). In support of his Complaint, Mr. Wallace alleges and avers as follows:

1. Mr. Wallace is, and at all times relevant hereto was, a resident of the State of Ohio.

2. Chase is a financial services corporation licensed to conduct business in the State of West Virginia with corporate offices in New York, New York.

3. Mr. Chabot was at all times relevant hereto the Head of Retail Investments of Chase. He was in this position at the time Mr. Wallace was wrongfully terminated from his employment at Chase.

4. Mr. Wallace was employed by Chase in various positions from October 1993 until on or about May 1, 2009.

5. Mr. Wallace worked in the State of West Virginia during his employment with Chase and was working in the State of West Virginia at the time of his termination.

6. Jurisdiction is appropriate for this Court. Mr. Wallace spent his career with Chase working in the State of West Virginia, particularly in counties that comprise the United States District Court for the Southern District of West Virginia. Chase both has a physical presence and conducts significant business in the counties comprising the United States District Court for the Southern District of West Virginia.

7. Mr. Wallace suffers from a degenerative eye disease known as retinitis pigmentosa, which has caused him to suffer progressive loss of vision to the point that he is almost totally blind.

8. Mr. Wallace was able to perform his job at Chase despite his increasing vision problems. He performed well enough to earn promotions and recognition for his work. Mr. Wallace was promoted to Investment Manager in October 2007.

9. In the summer of 2008, the progression of his disability led him to speak openly about his condition with his supervisor, John Estrella. Mr. Wallace notified Mr. Estrella that he could no longer view the computer screen or printed pages. Mr. Estrella acknowledged to Mr. Wallace that he was aware of Mr. Wallace's problem.

10. Mr. Wallace and Mr. Estrella also discussed the fact Mr. Wallace's daughter was assisting him with overnight stays and was driving him to various work locations throughout West Virginia.

11. Mr. Wallace also discussed his disability with Mr. Estrella's supervisor, Mr. Bob Garrett.

12. Because of his disability, Chase and a number of its employees began compiling allegations of inappropriate behavior against Mr. Wallace in an effort to

justify his termination and hide the fact he was being terminated because of his disability.

13. On or about April 14, 2009, just prior to his termination, Mr. Wallace was questioned by Chase representatives, including, but not limited to, representatives of Corporate Security. However, he was not asked about all of the accusations that have subsequently been leveled by Chase.

14. During this interview on April 14, 2009, Mr. Wallace discussed the following issues with Chase representatives:

    a. A single receipt showing a charge for Marlboro Lights cigarettes.

    b. His administrative assistant helping with his move out of his home.

    c. The rental of a moving van.

15. In response to this questioning on April 14, 2009, Mr. Wallace responded as follows:

    a. When asked about a single receipt showing a charge for Marlboro Lights cigarettes, Mr. Wallace explained that his daughter purchased the cigarettes while also purchasing gasoline for the vehicle being used for company business. He did not know the expense was on his receipt when he submitted it for reimbursement as a business expense. Further, no one ever asked Mr. Wallace about the expense before the expense reimbursement was approved, despite the fact it was well known that Mr. Wallace did not smoke.

    b. When asked about his administrative assistant helping with his move, Mr. Wallace explained that she came to his house to deliver certain work-related items Mr. Wallace needed to continue working on during his move. If she picked up or moved any boxes, this was not the purpose of her trip.

c. When asked about the rental moving van, Mr. Wallace explained that the van was for his move. There was no charge for the van because it was in the contracted rate. Nonetheless, he directed the rental company to prorate the amount and charge the Defendant individually.

16. Mr. Wallace was interviewed for less than one hour regarding these issues on or about April 14, 2009. He was never fully apprised of the allegations against him and was never given the opportunity to fully address any of these issues prior to his termination. In fact, Chase opened and concluded its investigation on a single day, April 14, 2009, without providing him an opportunity to address the complaints.

17. Chase stated the above and additional reasons for Mr. Wallace's termination. However, Mr. Wallace could have adequately explained these issues if given the opportunity.

18. Mr. Wallace was terminated due to his disability. Any other reasons set forth by Chase were a pretext for his termination.

19. Upon information and belief, other Chase employees without a disability have engaged in similar or worse conduct than that which Mr. Wallace is accused of doing and were not subject to termination. Upon information and belief, Chase employees have submitted inappropriate expense reimbursements and/or had their assistants perform personal services for them and were not terminated for their actions.

## Count I

## Unlawful Discriminatory Practices
## in Violation of the Americans with Disabilities Act

20. Mr. Wallace incorporates by reference the allegations set forth in Paragraphs 1 through 19 of the Complaint.

21. Chase and Mr. Chabot discriminated against Mr. Wallace in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., by terminating his employment because of his disability.

22. Upon information and belief, Chase and Mr. Chabot discriminated against Mr. Wallace in violation of the ADA when they did not discipline non-disabled employees in the same manner. Mr. Wallace was subjected to unequal treatment because of his disability.

23. As Head of Retail Investments of Chase, Mr. Chabot is responsible for the actions of Chase and its employees regarding their actions in discriminating against Mr. Wallace as outlined in this Complaint. Further, upon information and belief, Mr. Chabot was involved in the decision to terminate Mr. Wallace's employment.

24. As a result of this unlawful disability discrimination in violation of the ADA, Mr. Wallace has suffered monetary and other losses, including, but not limited to, loss of income and other benefits of employment, and will continue to suffer such losses in the future.

25. As a result of this unlawful disability discrimination in violation of the ADA, Mr. Wallace has suffered and will continue to suffer mental and emotional pain, suffering, distress, humiliation, aggravation, embarrassment, and anguish.

26. As a result of this unlawful disability discrimination in violation of the ADA, Mr. Wallace has been forced to incur legal fees and costs in enforcing his rights.

## Prayer for Relief

WHEREFORE, in consideration of Defendants' violation of Mr. Wallace's statutory rights, Mr. Wallace requests the following relief:

1. Reinstatement to his former position with Chase;

2. Compensatory damages in the form of out-of-pocket losses, lost income, and other benefits of employment;

3. Compensatory damages for mental and emotional pain, suffering, humiliation, distress, aggravation, embarrassment, and anguish;

4. Costs and attorney fees;

5. Punitive damages for the Defendants' willful, malicious, and reckless conduct in such amount as the jury finds appropriate.

6. Any pre-judgment and/or post-judgment interest as allowed by law; and

7. Any other relief that this Court may deem just and appropriate.

**Plaintiff demands a jury trial.**

                                                    **DOLAN L. WALLACE**

                                                    **BY COUNSEL**

                                                    s/ Richard W. Walters
                                                    Richard. W. Walters (WV Bar No. 6809)
                                                    Miller, Weiler, & Walters
                                                    Attorneys at Law
                                                    2 Hale Street
                                                    Charleston, West Virginia, 25301
                                                    (304) 343-7910