**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

DOLAN L. WALLACE,

                             Plaintiff,

v.                                          CIVIL  ACTION  NO.  3:10-0497

CHASE INVESTMENT SERVICES
CORPORATION, a corporation
licensed to do business in West Virginia, et al.,

                           Defendants.

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order sets forth the reasons for the Court's October 11, 2011 Order (Docket No. 85) granting Defendant's Motion for Summary Judgment.   In deciding to grant the motion, the Court considered the motions, the responses, the replies, and heard argument on the motions by counsel at the October 3, 2011 pretrial conference.  For the following reasons, Defendant's Motion is **GRANTED**.

**I.  Background**

Dolan Wallace began his employment with Bank One, a predecessor of Chase Investment Services, in 1993.  He worked for Bank One, and then for Chase, from that time until April 2009, when he was terminated.  Mr. Wallace was a hard worker who, by the time he was terminated, was responsible for supervising financial advisors throughout West Virginia.  Mr. Wallace suffers from retinitis pigmentosa, a disease that causes progressive vision loss and can ultimately result in total blindness.  By midsummer 2008, Mr. Wallace's condition had progressed to the point where he was unable to view his computer screen and required the assistance of a driver to travel between the

branch offices within his territory.  Mr. Wallace's supervisor, John Estrella, was aware of Mr. Wallace's limitations and approved of the use of a driver. In early 2009, one of Mr. Wallace's supervisors noticed some questionable expense reports and brought them to the attention of the Human Resources department, triggering an investigation by JPMorgan Chase's Global Security Investigations (GSI).  The GSI investigators reviewed hundreds of pages of expense reports and interviewed Mr. Wallace, his assistant Ms. Malone, and Ms. Haney, another employee and Mr. Wallace's one-time girlfriend.  The investigation resulted in the termination of Mr. Wallace and Ms. Malone, as well as a written reprimand for Ms. Haney.

Mr. Wallace is suing Chase Investment Services, alleging a wrongful termination in violation of the West Virginia Human Rights Act, W. Va. Code §§ 5-11-1 et seq.  Mr. Wallace alleges that he received disparate treatment and was fired due to his disability**,** retinitis pigmentosa, which has caused him to suffer progressive loss of vision.  Defendant responds that Mr. Wallace was terminated for violating corporate policies and not because of his disability.  Defendant further contends that Mr. Wallace has not received disparate treatment because non-disabled employees involved in similar activity were treated similarly.

## II.  Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P.* 56(a).  In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the Court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III.   Discussion

### A.      Prima Facie Discrimination Under the West Virginia Human Rights Act

The West Virginia Supreme Court of Appeals has expressly adopted a burden-shifting process that mirrors the *McDonnell-Douglas* framework for claims under Title VII. *Ford Motor Credit Co. V. West Virginia Human Rights Comm'n*, 696 S.E.2d 282, 292 (W. Va. 2010) (*citing McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973)).  In order to prove a prima facie case of disparate treatment under the West Virginia Human Rights Act, the plaintiff must prove that (1) that he is a member of a protected class; (2) that the employer made an adverse employment decision concerning the plaintiff; and (3) that, but for the plaintiff's protected status, the adverse decision would not have been made.  *Id.* at Syl. Pt. 1.  The West Virginia Supreme Court of Appeals has since clarified the third component of the prima facie case, stating: "Use of the 'but for' language may have been unfortunate, at least if it connotes that a plaintiff must establish anything more than an

inference of discrimination to make out a prima facie case." *Barefoot v. Sundale Nursing Home,* 457 S.E.2d 152, 161 (W. Va. 1996).

It is not disputed that Mr. Wallace has a disability or that he was terminated from his employment with Chase.  For purposes of this motion, the Court accepts that the evidence is sufficient to raise an inference of discrimination and that the plaintiff has met his burden of establishing a prima facie case.

**B.      Legitimate Non-Discriminatory Justification**

Next, the burden shifts to the employer to rebut the prima facie case by presenting a legitimate nondiscriminatory reason for such person's discharge.  *Id.* at 160.  If the employer meets this burden, the complainant must prove by a preponderance of the evidence that the employer's proffered reason was not a legitimate reason but a pretext for the discharge.  *Id.*  As the Fourth Circuit has explained in the context of Title VII, "once an employer rebuts the prima facie case with a legitimate, nondiscriminatory reason for the employment action, 'the *McDonnell Douglas* framework-with its presumptions and burdens-disappear [s], and the sole remaining issue [is] discrimination *vel non.*'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (*citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000)).

The burden of proving pretext merges with the plaintiff's ultimate burden of proving to the trier of fact by a preponderance of the evidence that the defendant intentionally discriminated against him.  In order to survive summary judgment at this step, the plaintiff must demonstrate "that there is a genuine dispute of material fact regarding pretext." *Nicholson v. Hyannis Air Service, Inc.*, 580 F.3d 1116 (9th Cir. 2009).

-4-

GSI's investigators ultimately found five distinct violations of Chase policies.  They found (1) that Mr. Wallace failed to follow policies for recording hours worked by his assistant; (2) that he improperly used his assistant to move his personal residence during work hours; (3) that he improperly allowed his daughter to use his corporate credit card and that he processed her personal expenses as business expenses; (4) that he rented his personal moving van on his corporate account; and (5) that he allowed unauthorized access to his e-mail and files, including confidential business information.  Together and separately, Chase relies on the conclusions of its GSI investigators as reasonable nondiscriminatory justifications for terminating Mr. Wallace.  In order to survive summary judgment, the plaintiff must show that there is a genuine issue of material fact that these conclusions were pretextual.  Analyzing each of these proffered justifications, and taking all factual inferences in the light most favorable to Mr. Wallace, he has failed to present sufficient evidence to support a finding either of pretext or intentional discrimination.

**1 and 2:  Mr. Wallace failed to follow policies for recording hours worked by his assistant and improperly used his assistant to help move his personal residence during work hours.**

The defendant offers as a justification for termination the fact that Mr. Wallace's assistant, Ms. Malone, improperly and without authorization, prepared, approved, and submitted expense reports on behalf of herself, and that she submitted mileage reimbursement requests for trips to Charleston that never occurred.  Early on, Ms. Malone reported to her Human Resources representative that she felt she was being asked to perform tasks outside her job description.  This initial report, along with concerns about Mr. Wallace's expenses, sparked the GSI investigation that ultimately led to the termination of both Ms. Malone and Mr. Wallace.  In her interview with the

GSI investigators, Ms. Malone reported that Mr. Wallace instructed her to submit the false mileage reports.  She submitted a signed statement to that effect.   Mr. Wallace responds that he was not aware of the fraudulent expense reports and that, as an accommodation to his blindness, the defendant approved of Ms. Malone's submission of expense reports since Mr. Wallace could not read or see the computer screen.  He further contends that Ms. Malone was lying when she implicated him in the fraud.

As another justification for dismissal, Defendant offers that during the course of their investigation, Ms. Malone told the GSI investigators that she was routinely required to perform tasks which she believed to be outside the scope of her position as Plaintiff's Administrative Assistant, including on one occasion assisting the Plaintiff to move from Ms. Haney's residence into his own personal residence during work hours. Plaintiff denies that Ms. Malone assisted in the move and would offer testimony to that effect.  The notes from his GSI interview indicate that he admitted to the investigators that Ms. Malone assisted with his move.

Unfortunately for Mr. Wallace, disagreement on these issues is not the sufficient to survive summary judgment.  Chase investigated both of these matters and found Ms. Malone to be more believable.  Even if we credit Mr. Wallace's story, it does not give rise to an inference that Chase's decision to terminate him was motivated by his disability or that this or other justification are pretext for discrimination.

**3.  Mr. Wallace allowed his daughter to use the corporate card and processed her personal charges as business expenses**.

Mr. Wallace's daughter drove him on many of his business trips because of his blindness. For these trips, they used both the plaintiff's private car as well as rental cars.  The defendant had

knowledge and approved of this accommodation.  During the investigation that led to Mr. Wallace's termination, it came to light that his daughter had used the corporate credit card to purchase personal items and that these personal items were processed as business expenses.  During the investigation, Mr. Wallace initially denied knowledge of the purchases but later admitted that he knew she had used the card to purchase cigarettes. Mr. Wallace would also seek to offer evidence that similarly situated employees were not terminated for accidental use of their corporate credit cards.[1]

Accepting the plaintiff's argument does not create a sufficient showing of pretext to survive summary judgment.   While similarly minor transgressions may have gone unpunished, the investigation in this case uncovered both minor misuse of the credit card as well as major violations of other expense reporting and reimbursement policies.

### 4.  Mr. Wallace charged his personal moving van as a work-related expense and received reimbursement.

The moving van used to move Mr. Wallace personal residence was charged to his corporate car rental account at Enterprise.  Mr. Wallace claims he told the Enterprise clerk that the car was to be charged to his personal account and that the charge to his corporate card was an oversight on their part.  Although Mr Wallace subsequently supplied documentation from Enterprise supporting this position, the fact remains that at the time of the investigation, the van was billed to Chase.  The investigators had only Mr. Wallace's word that the charge was accidental, which they did not credit in the context of other misstatements and other expense report irregularities.   Accepting Mr.

---

[1]Chase has filed a motion in limine (Docket No.77) to exclude Plaintiff's proffered character evidence.  The Court reserves judgment on that motion and assumes, for the purposes of this motion only, that the proffered evidence would be admissible at trial.

Wallace's explanation creates an inference that Chase's investigators were poor judges of his credibility at the time they made their recommendations. Even if they were wrong in their judgment, the plaintiff has not presented evidence that their judgment was a pretext or that Mr. Wallace was terminated due to his disability.

**5.   He allowed a Financial Advisor with whom he had a personal relationship to have access to his e-mail and files, including access to confidential business information and information regarding peers.**

The defendant cites as grounds for termination the fact that Mr. Wallace allowed another employee, specifically his then-girlfriend Susan Haney, to access his e-mail and other files.  Mr. Wallace responds that, due to his blindness, he was permitted to allow others to access his computer and files.  The GSI investigators concluded that Ms. Haney's access was unauthorized.  In his deposition, Mr. Wallace admits that the only accommodation he requested from his supervisors was to have a driver when commuting.  Furthermore, Chase issued a written reprimand to Ms. Haney, who admitted in a written statement that she not only read and responded to emails but that she also submitted expense reports in 2005-2006, before Mr. Wallace's condition had deteriorated and well before any request for accommodation.  Other than his naked assertion that, "arrangements were made" to allow others to access his computer, Mr. Wallace has provided no evidence that management approved or was aware that he allowed Ms. Haney to access his computer.

## IV.   Conclusion

This court "does not sit in judgment of the merits of the [d]efendant's proffered reason, only the sincerity behind it.  'If the fact finder believes that the proffered reason was the true reason for the decision, then the employer, while he may be guilty of poor business practices, is not guilty of

discrimination.'" *Prater v. Henry Schein, Inc.*, 621 F.Supp 2d 363, 369 (*citing Conway v. Eastern Associated Coal Corp.*, 358 S.E. 2d 423, 430 (W. Va. 1986)).  Taking every inference in favor of Mr. Wallace, there is not a material dispute that Chase's proffered justifications are pretext.  Chase discovered fraud including the submission of mileage reimbursements for trips that never took place, unauthorized use of an assistant, improper handling of the company credit card, unauthorized car rentals, and violations of computer access policies.  Chase brought in outside investigators who were ultimately confronted with a situation where the primary employees involved in the fraud provided conflicting stories, each implicating the other.  The GSI investigators believed Ms. Malone's story and found Mr. Wallace not to be credible.  Chase terminated them both and reprimanded Susan Haney.

Crediting Mr. Wallace' viewpoint on every one of these issues, as the Court is required to do at summary judgment, could lead a fact finder to conclude that Chase is guilty of poor business practices or that their investigators are poor judges of credibility, but not that their justifications are pretext for terminating Mr. Wallace because of his disability.  Put simply, even if Chase's investigators were wrong in all their judgments and conclusions, there is no evidence to suggest that those conclusions were pretext to cover up for terminating Mr. Wallace on account of his disability.  Only Mr. Wallace's allegation that the defendant was "tired of dealing with him" supports a finding of pretext, and that alone is not "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.  Mr. Wallace has the burden of proof on both pretext and discrimination and has not made, after adequate time for discovery, a showing sufficient to establish that element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  For these reasons, Defendant's motion is **GRANTED**.

-9-

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        October 13, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE